IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Hawa Kamara, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>- against -<br><br>Pepperidge Farm, Incorporated,<br><br>                Defendant | Case No. 1:20-cv-09012-PKC<br><br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.  Pepperidge Farm, Incorporated ("Defendant") manufactures, distributes, markets, labels and sells "Golden Butter [Crackers]" ("Product").



2. When consumers see a food represented as "[Golden] Butter [Crackers]," they will logically understand that a "butter cracker" is a type of cracker.

3. The meaning of compound words is greater than the sum of its parts, such that "butter cracker" does not mean "a cracker made with butter" but a cracker which is all or predominantly made with butter.

4. This means that wherever butter could be used in the Product, it would be used instead of using its synthetic substitutes, vegetable oils.

5. The Product name is misleading because it contains a non-de minimis amount of vegetable oil, more than expected given the absence of any qualification of "Golden Butter."

6. Consumers prefer butter to chemically produced "vegetable" oils for reasons including taste, health and avoidance of highly processed artificial substitutes.

7. Butter is valued by consumers over vegetable oils because it does not contain the trans fats of vegetable oils.

8. Butter is less processed, since it is made by churning cow's milk, instead of chemical reactions to make vegetable oils.

9. Butter is rich in nutrients like calcium and Vitamins A and D.

10. Butter costs more than vegetable oils like soybean, sunflower or canola oil.

11. The Product's name is misleading because even though it contains butter, it contains a non-de minimis amount of butter substitutes, as indicated on the ingredient list.

> **MADE FROM:** ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), ==BUTTER== (MILK), ==VEGETABLE OILS== (CANOLA, SUNFLOWER AND/OR SOYBEAN), SUGAR, INVERT SYRUP, CONTAINS 2% OR LESS OF: SALT, MALTED BARLEY FLOUR, BAKING SODA, MONOCALCIUM PHOSPHATE

12. The vegetable oils fulfill one or more of the following functions.

13. The vegetable oil is used as a shortening ingredient in the Product, which results in the use of less butter.

14. For many crackers, immediately after they are taken from the oven they are passed through a unit where they are sprayed with warm vegetable oil.

15. The oil is distributed either from pressure nozzles, spinning discs or by electrostatic charge.

16. The oil dressing is applied at around 8–18% of the cracker weight, which is consistent with the amount of vegetable oil in the Product based on the Nutrition Facts.

17. The vegetable oil is used to improve the appearance of the cracker surface and enhancing the color to a golden yellow.

18. The use of vegetable oil in this way is misleading because the result is consumers will expect the Product to have more butter.

3

19. Though vegetable oils are typically "refined, bleached and deodorized," purporting to result in a food that is neutral in taste, the reality is different.

20. Vegetable oils, such as soybean oil, are highly susceptible to oxidation.

21. The result is "reversion" of the flavor back to the original crude oil before it was refined, bleached and deodorized.

22. The result is a flavor described as "beany, ""powdery" or "fishy."

23. The added vegetable oils detract from the taste of the Product and cause the butter taste to be pushed to the background.

24. "Butter crackers" exist in the marketplace which are made only with butter and not with vegetable oils.



**INGREDIENTS:** Enriched Unbleached Flour (wheat flour, malted barley flour, niacin, reduced iron, thiamine mononitrate, riboflavin, folic acid), Butter (cream [milk], salt), Cane Sugar, Non-GMO Baking Powder (monocalcium phosphate, sodium bicarbonate, corn starch), Sea Salt, Topping Salt.

25. Defendant did not have to name the Product "Golden Butter [Crackers]," but chose to, since this is more enticing to consumers.

26. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

27. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

28. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

29. The value of the Product that Plaintiff purchased and consumed was materially less than its value as represented by Defendant.

30. Had Plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

31. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $2.64 for 9.75 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## Jurisdiction and Venue

32. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

33. Plaintiff Hawa Kamara is a citizen of New York.

34. Defendant Pepperidge Farm, Incorporated, is a Connecticut corporation with a principal place of business in Norwalk, Fairfield County, Connecticut and is a citizen of Connecticut.

35. "Minimal diversity" exists because Plaintiff and Defendant are citizens of different states.

36. Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

37. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of Plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

38. This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

### Parties

39. Plaintiff is a citizen of Bronx, Bronx County, New York.

40. Defendant Pepperidge Farm, Incorporated is a Connecticut corporation with a principal place of business in Norwalk, Connecticut, Fairfield County and is a citizen of Connecticut.

41. Plaintiff Hawa Kamara purchased the Product on one or more occasions, during the relevant period, including 2019 and 2020, at stores including but not necessarily limited to, Target, 112 W 34th St, New York, NY 10120, and among other times, purchased the Product between June and October 2020.

42. Plaintiff bought the Product at or exceeding the above-referenced price because she wanted a Product that contained butter and not butter substitutes and expected that, due to the product name and descriptions.

43. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

44. Plaintiff paid more for the Product based on the misrepresentations.

45. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

46. The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

47. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

48. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

49. Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

50. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

51. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

52. Plaintiff is an adequate representatives because her interests do not conflict with other members.

53. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

54. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

55. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

56. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350,</u>
(Consumer Protection Statute)

57. Plaintiff incorporates by reference all preceding paragraphs.

58. Plaintiff and class members desired to purchase and consume products which were as described and marketed by Defendant and expected by reasonable consumers, given the product type.

59. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

60. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

61. The amount and proportion of the characterizing component, butter, has a material bearing on price and consumer acceptance of the Product and consumers do not expect butter alternatives where the label says, "Golden Butter" without qualification.

62. Plaintiff relied on the statements, omissions and representations of Defendant, and Defendant knew or should have known the falsity of same.

63. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

64. Plaintiff incorporates by reference all preceding paragraphs.

65. Defendant misrepresented the substantive, nutritional, quality, compositional and/or environmental attributes of the Product.

66. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

67. This duty is based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

68. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a well-known and respected brand or entity in this sector.

69. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

70. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

71. Plaintiff incorporates by reference all preceding paragraphs.

72. The Product was manufactured, labeled and sold by Defendant or at its express directions and instructions, and warranted to Plaintiff and class members that it possessed substantive, quality, compositional and/or environmental which they did not.

73. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

74. This duty is based, in part, on Defendant's position as one of the most recognized companies in the nation in this sector.

75. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers and their employees.

76. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

77. The Product did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable.

78. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

79. Plaintiff incorporates by reference all preceding paragraphs.

80. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

81. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were neither true nor accurate and misled consumers.

82. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

83. Plaintiff incorporates by reference all preceding paragraphs.

84. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary and statutory damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   April 12, 2021

    Respectfully submitted,

    Sheehan & Associates, P.C.
    /s/Spencer Sheehan
    Spencer Sheehan
    60 Cuttermill Rd Ste 409
    Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
    *spencer@spencersheehan.com*

1:20-cv-09012-PKC
United States District Court
Southern District of New York

Hawa Kamara, individually and on behalf of all others similarly situated,

                              Plaintiff,

    - against -

Pepperidge Farm, Incorporated,

                              Defendant

## First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
   Tel: (516) 268-7080
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  April 12, 2021

                                                                   /s/ Spencer Sheehan
                                                                     Spencer Sheehan