UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HAWA KAMARA, individually and on behalf of
all others similarly situated,

                           Plaintiff,                       20-cv-9012 (PKC)

              -against-                             OPINION
                                                   AND ORDER

PEPPERIDGE FARM, INCORPORATED,

                           Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Hawa Kamara purchased "Golden Butter" crackers at a Target store on West 34th Street with the expectation that "wherever butter could be used in the Product, it would be used instead of using its synthetic substitutes, vegetable oils."  According to an ingredients list quoted in the First Amended Complaint (the "Complaint"), the crackers were indeed made with butter, but also included a lesser quantity of vegetable oils.  Kamara asserts that the presence of vegetable oils renders the "Golden Butter" packaging misleading or deceptive because a reasonable consumer would have falsely concluded that the crackers were "all or predominantly made with butter."

          The Complaint asserts that the packaging's "Golden Butter" label is misleading or deceptive.  It brings several claims under New York law, as well as a claim under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, et seq.  Defendant Pepperidge Farm, Inc. ("Pepperidge Farm") moves to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.  It urges that the product name "Golden Butter" accurately identifies butter as the crackers' predominant fat or

oil ingredient and that a reasonable consumer would not understand the "Golden Butter" label to preclude the use of a lesser amount of vegetable oils.

For the reasons that will be explained, the Court concludes that the Complaint does not plausibly allege that the packaging is deceptive or misleading.  The motion to dismiss will be granted in full and judgment will be entered for Pepperidge Farm.

BACKGROUND.

Pepperidge Farm manufactures and sells a type of cracker identified on its packaging as a "Golden Butter" cracker.  (Compl't ¶ 1.)  The Complaint includes the following image of the packaging:



(Compl't ¶ 1.)  Aside from the "Golden Butter" name, the Complaint does not allege that the packaging touted other qualities about the crackers or their ingredients.

The Complaint acknowledges that the product "contains butter."  (Compl't ¶ 11.)  However, according to Kamara, consumers who see the packaging are misled into thinking that they are buying "a cracker which is all or predominantly made with butter," when, in fact, the Golden Butter crackers also contain vegetable oils.  (Compl't ¶¶ 2-3, 11.)  Kamara states:  "The meaning of compound words is greater than the sum of its parts, such that 'butter cracker' does not mean 'a cracker made with butter' but a cracker which is all or predominantly made with butter."  (Compl't ¶ 3.)  "This means that wherever butter could be used in the Product, it would be used instead of using its synthetic substitutes, vegetable oils."  (Compl't ¶ 4.)

Kamara states that the cracker "contains a non-de minimis amount of vegetable oil, more than expected given the absence of any qualification of 'Golden Butter.'"  (Compl't ¶ 5.)  The ingredients list displayed on the packaging reads in part:

> ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), BUTTER (MILK), VEGETABLE OILS (CANOLA, SUNFLOWER AND/OR SOYBEAN) . . . .

(Compl't ¶ 11.)

The Complaint asserts that consumers prefer butter-based products over those containing vegetable oils.  (Compl't ¶¶ 5-24.)  According to Kamara, butter tastes better, "is rich in nutrients like calcium and Vitamins A and D," does not contain trans fats, is more expensive, and "is less processed, since it is made by churning cow's milk, instead of chemical reactions to make vegetable oils."  (Compl't ¶¶ 6-10.)  Kamara alleges that the "Golden Butter" crackers may use vegetable oil as a shortening agent and that "many crackers" are also sprayed with a warm vegetable oil to give them a pleasing appearance.  (Compl't ¶¶ 12-18.)  According to Kamara, "The use of vegetable oil in this way is misleading because the result is consumers will expect the Product to have more butter."  (Compl't ¶ 18.)  She also alleges that vegetable oils are

susceptible to oxidation, which can detract from a butter flavor and result in a beany, powdery or fishy taste.  (Compl't ¶¶ 20-23.)  However, Kamara does not allege that the crackers have a displeasing taste or are not butter-flavored.

According to the complaint, marketing the crackers as "Golden Butter" misrepresents the product through affirmative misstatements, half-truths and omissions, and deceives, misleads and defrauds consumers about the crackers.  (Compl't ¶¶ 25-27.)

The Complaint includes allegations that seek class-wide relief on behalf of New York purchasers of the Golden Butter crackers.  (Compl't ¶¶ 48-56.)  Jurisdiction is premised on the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), but the Complaint also alleges complete diversity between Kamara, a citizen of New York, and Pepperidge Farm, which is alleged to be a Connecticut corporation with its principal place of business in Connecticut.  (Compl't ¶¶ 32-34, 39-40.)  The Court also has federal question jurisdiction because the Complaint brings a claim under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301.  (Compl't ¶¶ 71-78.)  The Complaint brings claims under New York law of negligent misrepresentation, breach of express and implied warranty, fraud and unjust enrichment, as well as a claim under New York General Business Law §§ 349 and 350.  (Compl't ¶¶ 57-84.)

RULE 12(b)(6) STANDARD.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  Id. at

679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

DISCUSSION.

> I.      The Complaint Does Not Plausibly Allege a Deceptive Act under the New York General Business Law.

Kamara's consumer-fraud claim under GBL 349 and 350 asserts that, as a reasonable consumer, she wanted to purchase a product containing butter in the "amount and proportion" described in the packaging. (Compl't ¶¶ 58, 61.)  Kamara asserts that use of the word butter in the "Golden Butter" cracker packaging "has a material bearing on price and consumer acceptance of the Product and consumers do not expect butter alternatives where the label says, 'Golden Butter' without qualification." (Compl't ¶ 61.)

Section 349 of the GBL declares deceptive acts and practices unlawful and section 350 declares false advertising unlawful.  "The standard for recovery under [section] 350, while specific to false advertising, is otherwise identical to Section 349." Denenberg v. Rosen, 71 A.D.3d 187, 194 (1st Dep't 2010) (quoting Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002)).  The elements of a cause of action under both sections 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." Id. (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995)).

To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214, 85 N.Y.2d

at 26; see also Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015).  In determining

whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading

statement in light of its context on the product label or advertisement as a whole."  Pichardo v.

Only What You Need, Inc., 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (Caproni, J.)

(quoting Wurtzburger v. Kentucky Fried Chicken, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13,

2017) (Roman, J.)); see also Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n

determining whether a reasonable consumer would have been misled by a particular

advertisement, context is crucial.").  "It is well settled that a court may determine as a matter of

law that an allegedly deceptive advertisement would not have misled a reasonable consumer."

Id. at 741 (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995), and Oswego, 85

N.Y.2d at 26).

        In urging that she has plausibly alleged consumer deception, Kamara points to the

Second Circuit's decision in Mantikas v. Kellogg Co., 910 F.3d 633, 636-39 (2d Cir. 2018),

which concluded that a plaintiff had plausibly alleged Cheez-It brand crackers were deceptively

labeled as "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" when enriched flour was

actually the principal grain ingredient in the crackers.  Mantikas explained that a review of the

ingredients list showed that enriched flour predominated over whole grain, which contradicted

the package's prominent "WHOLE GRAIN" labeling.  Id. at 637.  It observed that a reasonable

consumer should not be expected to scrutinize an ingredient list in order to discover the truth

behind a prominent but misleading statement on the packaging.  Id.  Because the packaging's

statements "falsely imply that the grain content is entirely or at least predominantly whole

grain," a reasonable consumer would not understand that enriched white flour was the product's

primary ingredient.  Id.  at 637-38.  The Second Circuit therefore concluded that the plaintiff

plausibly stated a claim under GBL 349 and 350.  Id. at 638-39.

Kamara also points to Judge Bianco's bench ruling in Berger v. MFI Holding

Corporation, 2019 WL 10528306, at *2-3 (E.D.N.Y. Apr. 3, 2019), which concluded that under

Mantikas, a plaintiff plausibly alleged deceptive packaging of a "Simply Potatoes" product that

claimed to be "fresh" and "made with real butter and milk" but also included margarine.  In

addition to emphasizing "real butter," the packaging prominently included the words "simply,"

"simple" and "simplest."  Id. at *2.  Judge Bianco concluded that in the full context of the

package, a reasonable consumer could be misled into believing that the potatoes were made only

with butter and did not include margarine, noting "surrounding representations including Simply

Potatoes, simple, fresh, and one of nature's simplest foods . . . ."  Id. at *3-4.

Three other decisions have distinguished Mantikas and dismissed claims directed

toward the use of butter in combination with other fats or oils.  In Boswell v. Bimbo Bakeries

USA, Inc., 2021 WL 5144552, at *1 (S.D.N.Y. Nov. 4, 2021), the plaintiff asserted that an

Entenmann's "All Butter Loaf Cake" product was deceptively labeled because the cake contains

soybean oil and artificial flavors, in addition to butter.  The plaintiff asserted that a reasonable

consumer would understand the "All Butter" description to mean that the product contained no

butter alternatives, like vegetable oils.  Id. at *3.  Judge Furman noted that, taken literally, "All

Butter" could be understood to mean that the product was entirely butter, and that a reasonable

consumer would understand that a cake is made with many additional ingredients.  Id.  The "All

Butter" label also could describe the product's flavor and signify that there is no second flavor,

such as chocolate.  Id.  Because the product description could reasonably be understood to have

different meanings, Judge Furman concluded that the packaging was ambiguous, as opposed to

deceptive or misleading, and that a consumer who wanted additional information could find it in the packaging's ingredients list.  Id.  The plaintiff therefore did not allege a deceptive practice under GBL 349 and 350.  Id. at *3-4.

In Sarr v. BEF Foods, Inc., 2020 WL 729883, at *1 (S.D.N.Y. 2020), the plaintiff sued the manufacturer of a ready-to-eat mashed potatoes product whose packaging touted itself as "Made with Real Potatoes, Milk & Butter."  The ingredients list revealed that the product also contained "soybean and/or canola oil."  Id.  The complaint alleged that consumers prefer butter and would not buy the product if they knew the potatoes contained both butter and vegetable oils.  Id.  The ingredients list included both butter and vegetable oils, with butter preceding vegetable oils, which confirmed that the butter quantity predominated.  Id. at *5.  Judge Ross concluded that the plaintiff did not plausibly allege that a reasonable consumer could be misled by the packaging because "the Mashed Potatoes do, in fact, contain real butter.  Second, it is not plausible that a reasonable consumer would likely interpret the 'real butter' representation to imply that the Mashed Potatoes did not also contain additional fats."  Id. at *4 (citations omitted).

In a third butter-related decision, a package of ready-to-eat mashed potatoes boasted that the product was "made with real butter."  Reyes v. Crystal Farms Refrigerated Distribution Co., 2019 WL 3409883, at *1 (E.D.N.Y. 2019).  The plaintiff alleged that this statement violated GBL 349 and 350 because the potatoes contained both butter and margarine. Id.  Judge Garaufis concluded that the statement "made with real butter" was not deceptive or misleading under the GBL because "[d]efendant's mashed potatoes contain butter" and the packaging twice stated that the ingredients also included margarine, including in a boldface statement separate from the ingredients list.  Id. at *3.  Judge Garaufis noted that butter preceded

margarine on the ingredients list, suggesting that the product contained more butter than

margarine. Id. (citing 21 C.F.R. § 101.4 (requiring ingredients to be listed in descending order of

prominence by weight)). The plaintiff also did not allege that the potatoes contained more

margarine than butter. Id.

       Sarr and Reyes distinguished Mantikas because in those cases, the ingredients

lists confirmed that butter predominated over other fats and oils: vegetable oils and margarine.

Sarr, 2020 WL 729883, at *4; Reyes, 2019 WL 3409883, at *4. By contrast, the Cheez-Its

purchasers in Mantikas were deceived into thinking that whole grains predominated, and would

not know that enriched flour was the predominant ingredient unless they scrutinized the

ingredients list. See id.; accord Boswell, 2021 WL 5144552, at *2 (the labeling in Mantikas was

unambiguously misleading and was not cured by the "small print" of the ingredients list). Judge

Ross also distinguished the decision in Berger, noting that the packaging at issue in Sarr did not

invoke the concept of simplicity and that identifying a misleading statement is context-specific.

2020 WL 729883, at *4 n.1.

       Applying Mantikas, courts have concluded that a plaintiff has plausibly alleged a

deceptive statement where packaging falsely states or implies that a prominently mentioned

ingredient predominates, when, in fact, that ingredient is secondary. See, e.g., Izquierdo v.

Panera Bread Co., 450 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (complaint plausibly alleged

consumer deception because a reasonable consumer would understand defendant's "Blueberry

muffin" to predominantly contain natural blueberries, when in fact synthetic blueberries

predominated) (Broderick, J.); Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp. 3d 370,

382-85 (S.D.N.Y. 2021) (complaint plausibly alleged consumer deception because enriched

white flour was the predominant graham cracker ingredient, as opposed to the whole wheat

"graham" flour emphasized in packaging) (Woods, J.).  When the ingredients list confirms that the prominently mentioned ingredient does in fact predominate, courts have concluded that the complaint does not plausibly allege a deceptive statement.  See, e.g., Wallace v. Wise Foods, Inc., 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021) ("The ingredients label, which is consistent with Wise's representations on the front of its packaging, explains that the chips contain cheddar cheese and sour cream while informing that they contain lesser amounts of artificial flavoring.") (Oetken, J.); Harris v. Mondelez Global LLC, 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) ("[I]t is not misleading for Defendant to represent that its Oreos are made with 'real' cocoa when they in fact contain cocoa").

Here, as in Sarr and Reyes, the packaging accurately indicated that the product contained butter, and the ingredients list confirmed that butter predominated over other oils and fats.  (Compl't ¶ 11.)  The reasoning of Sarr and Reyes is persuasive.  Butter is the second ingredient listed in the ingredients list, after flour but ahead of vegetable oils, suggesting that butter predominates over other fats or oils.  See 21 C.F.R. § 101.4(b)(14) ("Each individual fat and/or oil ingredient of a food intended for human consumption shall be declared by its specific common or usual name (e.g., 'beef fat', 'cottonseed oil') in its order of predominance in the food . . . .").  Similarly, as in Boswell, a reasonable consumer could believe that "Golden Butter" described the product's flavor and was not a representation about ingredient proportions.  A reasonable consumer who encountered defendant's packaging would accurately understand the "Golden Butter" cracker to be shortened and flavored with butter.  The Complaint does not plausibly allege why a reasonable consumer also would believe that the use of butter precluded secondary usage of other fats or oils, either as an additional shortener or for external application to enhance the crackers' appearance.  (Compl't ¶¶ 13-17.)  Unlike Mantikas, a reasonable

consumer would not need to scrutinize fine print to understand the truth behind a prominent

packaging claim, and unlike Berger, the packaging did not emphasize simplicity or other virtues.

It merely used the phrase "Golden Butter" without elaboration.  The Complaint does not

plausibly allege why a reasonable consumer would understand the phrase "Golden Butter" to

mean that "wherever butter could be used in the Product, it would be used instead of using its

synthetic substitute, vegetable oil."  (Compl't ¶ 4.)  For these reasons, the Complaint does not

plausibly allege that a reasonable consumer would be misled by the packaging's prominent use

of the term "Golden Butter."

Kamara's claim under GBL 349 and 350 will therefore be dismissed.

II.      The Negligent Misrepresentation Claim Will Be Dismissed.

The Complaint alleges that Pepperidge Farm negligently misrepresented the

ingredients of the "Golden Butter" crackers and that because of its special knowledge and

experience, it had a duty to disclose the truth about the crackers' ingredients.  (Compl't ¶ 66-67.)

It alleges that the packaging "took advantage of consumer's cognitive shortcuts . . . ."  (Compl't

¶ 68.)

Under New York law, in order to state a claim for negligent misrepresentation, a

plaintiff must allege, "(1) the existence of a special or privity-like relationship imposing a duty

on the defendant to impart correct information to the plaintiff; (2) that the information was

incorrect; and (3) reasonable reliance on the information."  Mandarin Trading Ltd. v.

Wildenstein, 16 N.Y.3d 173, 180 (2011) (quotation marks omitted).  To plead a special

relationship, a plaintiff must allege that he or she was a "known party or parties."  Sykes v. RFD

Third Ave. 1 Assoc., LLC, 15 N.Y.3d 370, 373 (2010).  Being "one of a class of potential"

recipients of a statement will not suffice.  Westpac Banking Corp. v. Deschamps, 66 N.Y.2d 16,

- 11 -

19 (1985).  "[L]iability for negligent misrepresentation has been imposed only on those persons

who possess unique or specialized expertise, or who are in a special position of confidence and

trust with the injured party such that reliance on the negligent misrepresentation is justified."

Kimmell v. Schaefer, 89 N.Y.2d 257, 263 (1996).  Such a duty most often arises in a client

relationship with a professional, such as a lawyer, accountant or engineer.  Id. at 263-64.

   Kamara has failed to allege negligent misrepresentation in two respects.  First, for

the reasons explained, she has not alleged that Pepperidge Farm imparted incorrect information

to her.  Second, the Complaint has not plausibly alleged a special or privity-type relationship

between Pepperidge Farm and Kamara.  The Complaint describes Kamara as one of many

consumers to encounter the "Golden Butter" crackers label and does not describe a direct

relationship between Kamara and Pepperidge Farm.

   The negligent misrepresentation claim will be dismissed.

   III.  The Breach of Implied Warranty Claim Will Be Dismissed.

   Kamara asserts that the "Golden Butter" crackers did not conform to the

affirmations of fact and promises made by Pepperidge Farm, and therefore were not

merchantable.  (Compl't ¶ 77.)  Under New York UCC 2-314(2)(a) and (f), in order for a good to

be merchantable, it must "pass without objection in the trade under the contract description" and

"conform to the promises or affirmations of fact made on the container or label, if any."  In her

opposition memo, Kamara asserts that the crackers were not capable of passing without objection

in trade because they contained "less healthful vegetable oil in place of butter."  (Opp. Mem. at

15.)

   "'Where the sale of a food or beverage is concerned, courts have ruled that the

product need only be fit for human consumption to be of merchantable quality.'"  Cosgrove v.

Oregon Chai, Inc., 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) (quoting Silva v. Smucker Nat.

Foods, Inc., 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015)); see also Donahue v. Ferolito,

Vultaggio & Sons, 13 A.D.3d 77, 79 (1st Dep't 2004) ("The claim for breach of implied

warranty was also properly dismissed on the ground that these merchantable beverages caused

no ill effects and were fit for their intended purpose, namely, liquid refreshment.").  New York

law also "'requires a showing of privity between the manufacturer and the plaintiff.'"  Cosgrove,

520 F. Supp. 3d at 586 (quoting Ebin v. Kangadis Food Inc., 2013 WL 6504547, at *6 (S.D.N.Y.

Dec. 11, 2013)); accord Canon Fin. Servs., Inc. v. Meyers Assocs., LP, 139 A.D.3d 575, 576 (1st

Dep't 2016) (noting privity requirement); Donahue, 13 A.D.3d at 79 (same).

       The Complaint does not plausibly allege that the "Golden Butter" crackers were

unfit for human consumption, as required under New York.  Donahue, 13 A.D.3d at 79.  As

already discussed, Kamara also has not alleged privity with Pepperidge Farm.  The implied

warranty claim will therefore be dismissed.

       IV.    The Breach of Express Warranty Claim and Magnuson Moss Warranty
               Act Claims Will Be Dismissed.

       Kamara asserts that the "Golden Butter" crackers breached an express warranty

by falsely claiming "that it possessed substantive, quality, compositional and/or environmental

[sic] which they did not."  (Compl't ¶ 72.)  An express warranty is an "affirmation of fact or

promise made by the seller to the buyer which relates to the goods and becomes part of the basis

of the bargain." N.Y.U.C.C. § 2-313(1)(a).  "To state a claim for breach of express warranty

under New York law, a plaintiff must allege (1) the existence of a material statement amounting

to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the

immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."

Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (collecting cases).

       For the reasons explained, the Complaint does not plausibly allege a breach of any material statement about the crackers' butter content.  It therefore has not alleged the breach of an express warranty.

       Kamara's claim under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ("MMWA"), will also be dismissed because she has not plausibly alleged an underlying breach of warranty.  The MMWA provides for a private right of action if a consumer is damaged based on a supplier's failure to comply with its obligations under a written or implied warranty. 15 U.S.C. § 2310(d)(1).  Because the Complaint does not plausibly allege a breach of warranty, Kamara's WWMA claim will be dismissed.  See Cosgrove, 520 F. Supp. 3d at 587 ("the absence of a qualifying warranty necessitates dismissal of the MMWA claim."); Garcia v. Chrysler Grp. LLC, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.").

       Separately, the MMWA's definition of a "written warranty" requires a written affirmation of fact or promise that "affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time . . . ."  15 U.S.C. § 2301(6)(A).  The "Golden Butter" product description does not relate to defect-free workmanship or a specified level of performance over time.  See generally Barton v. Pret A Manger (USA) Ltd., 2021 WL 1664319, at *13 (S.D.N.Y. Apr. 27, 2021) (the phrases "Natural Food" and "natural ingredients" "simply describe the products" and made no warranty as to defect-free workmanship and level of performance) (collecting cases).

V.      The Fraud Claim Will Be Dismissed.

Kamara also brings a claim of fraud.  (Compl't ¶¶ 79-82.)  She alleges that
Pepperidge Farm misrepresented the attributes of the crackers and that its "fraudulent intent is
evinced by its failure to accurately identify the Product on the front label, when it knew its
statements were neither true nor accurate and misled consumers."  (Compl't ¶¶ 80-81.)

"'The elements of a cause of action for fraud require a material misrepresentation
of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff
and damages.'"  Epiphany Cmty. Nursery Sch. v. Levey, 171 A.D.3d 1, 8 (1st Dep't 2019)
(quoting Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (2009)).  A
plaintiff must also allege that the defendant intended to commit fraud, and intent may be alleged
based on the surrounding circumstances.  ACA Fin. Guar. Corp. v. Goldman, Sachs & Co., 131
A.D.3d 427, 428-29 (1st Dep't 2015).

Rule 9(b), Fed. R. Civ. P., requires that "a party must state with particularity the
circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of
a person's mind may be alleged generally."  Courts "'must not mistake the relaxation of Rule
9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud
on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a
strong inference of fraudulent intent.'"  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir.
2006) (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)).  "'The requisite
'strong inference' of fraud may be established either (a) by alleging facts to show that defendants
had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong
circumstantial evidence of conscious misbehavior or recklessness.'"  Id. at 290-91 (quoting
Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

For the reasons already explained, the Complaint does not plausibly allege that the "Golden Butter" packaging materially misrepresented the ingredients in defendant's crackers. Because the Complaint does not allege a material misrepresentation, the fraud claim will be dismissed. Separately, the Complaint does not raise the strong inference of fraud required by Rule 9(b). The package itself discloses the use of vegetable oils. Even if a consumer did not expect the product to contain vegetable oils, their disclosure is not consistent with fraudulent intend. See Campbell, 516 F. Supp. 3d at 391 (identification in ingredients list "is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud."). The Complaint's vague allegations of fraudulent intent do not satisfy the particularity required by Rule 9(b).

The fraud claim will therefore be dismissed.

VI.     The Unjust Enrichment Claim Will Be Dismissed.

The Complaint's unjust enrichment claim asserts that Pepperidge Farm was unjustly enriched because it obtained money and benefits from Kamara, whose purchase "was not as represented and expected . . . ." (Compl't ¶ 84.) "The elements of a cause of action to recover for unjust enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." GFRE, Inc. v. U.S. Bank, N.A., 130 A.D.3d 569, 570 (2d Dep't 2015) (citations and quotation marks omitted).

Here, plaintiff's unjust enrichment claim cannot succeed "'because it merely duplicates [Plaintiff's] other claims based on the same alleged misrepresentations.'" Reyes, 2019 WL 3409883, at *5 (quoting Davis v. Hain Celestial Grp., Inc, 297 F. Supp. 3d 327, 338

- 16 -

(E.D.N.Y. 2018)).  The Complaint also does not plausibly allege why equitable considerations would weigh against Pepperidge Farm.

The unjust enrichment claim will therefore be dismissed.

VII.    Leave to Amend Is Denied.

Leave to further amend will be denied for the reasons that follow.  This action was commenced on October 28, 2020.  Thereafter Pepperidge Farm filed a pre-motion letter with the Court detailing the deficiencies in the plaintiff's complaint.  The undersigned's Individual Practices required the following of plaintiff in responding to Pepperidge Farm's letter: "If a Pre-Motion Letter seeks to file a motion to dismiss, the party responding shall unambiguously state whether he, she or it seeks leave to amend."  (Individual Practices at 3.A.iv.)  Plaintiff appropriately responded, indicating that she would amend her pleading, which she did on April 12, 2021.  Pepperidge Farm again filed a pre-motion letter arguing that the First Amended Complaint remained deficient in respects that it detailed in the letter.  This time plaintiff did not seek further leave to amend.  At a May 6, 2021 conference, the Court set a schedule on the motion to dismiss.  With Pepperidge Farm's motion in hand, plaintiff made the following perfunctory statement as her "Conclusion" to her opposition brief: "For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss or in the alternative grant leave to file a Second Amended Complaint."  (Opp. Mem. at 17.)  No particulars were offered as to the manner in which the pleading would be amended.

The plaintiff, armed with defendant's arguments, twice has been invited by the Court's Individual Practices to seek to amend.  On the first occasion she took the opportunity and filed the First Amended Complaint.  In response to the second pre-motion letter she did not avail itself of a further opportunity.  As the Individual Practices advised, "The Pre-Motion Letter and

response will be taken into account in deciding whether further leave to amend will be granted in

the event the motion to dismiss is granted." (Individual Practices at 3.A.iv.)  Certainly, if

defendant's motion were based on novel arguments not sufficiently detailed in the pre-motion

letters, it may counsel in favor of granting further leave to amend, but that is not the case here.

CONCLUSION.

       Defendant's motion to dismiss is granted in its entirety.  The Clerk is directed to

terminate the motion and the related letter-motions.  (Docket # 18, 24, 28.)  Plaintiff's request for

leave to amend is denied.  The Clerk is directed to close the case and to enter judgment for the

defendant.

       SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
      November 9, 2021